UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JARVIS CAMPBELL,

                            Petitioner,

  — against —

JAMES J. WALSH, Superintendent, Sullivan
Correctional Facility,
                        Respondent.
---------------------------------------------------------------X

**MEMORANDUM and ORDER**

07-CV-5433 (SLT)

**TOWNES, United States District Judge:**

Jarvis Campbell ("Petitioner"), who is incarcerated pursuant to a judgment of the New York State Supreme Court, Kings County, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. Proceeding *pro se*, Petitioner challenges his conviction for depraved indifference murder on two grounds: (1) the evidence was legally insufficient to support the conviction; and (2) he was denied the right to a fair trial because the trial court improperly admitted into evidence a videotaped statement that contained admissions regarding uncharged drug sales. For the reasons set forth below, the petition is denied.

## BACKGROUND

Petitioner was convicted of second degree murder for shooting and killing a twenty-one year old man named Demetrious Wright in the courtyard of a public housing complex in the Brownsville section of Brooklyn. On November 13, 2000, at about 11:00 a.m., Petitioner approached the decedent, Kareem Durham, and Jamel Bascomb in the courtyard and asked Durham, "where that nigger Born at?" (Trial Transcript at 778.) According to Bascomb, Durham answered, "Yo we don't mess with them dudes." (Trial Transcript at 851.)

1

Petitioner then reached into his waistband to pull out a gun, and Durham, Bascomb, and Wright began to run away. Bascomb looked back as he ran and observed Wright running behind him. Petitioner opened fire, shooting multiple times in the direction of the men. An eyewitness driving by the scene of the shooting testified that he heard five shots and noticed that the shooter appeared to be smiling. Wright was struck in the back of the head and died as a result of the wound, but Durham and Bascomb were not hit. They fell to the ground as they were fleeing, and when they pulled themselves up, they discovered that Wright had been shot.

Petitioner was charged with both intentional and depraved indifference murder. At trial, Durham & Bascomb identified Petitioner as the shooter and described the incident in detail. Russell Green testified that Petitioner's brother, Malcolm Campbell, had been stabbed the night before the shooting. He stated that he had accompanied Petitioner and Malcolm Campbell to a hospital, where Malcolm received treatment. There was no evidence linking the decedent to the stabbing of Petitioner's brother.

A videotaped interview of Petitioner was also admitted into evidence. In the video, Petitioner denied involvement in the shooting, stating that he was walking with his brother and friend when he heard shots fired. Defense counsel objected to portions of the videotape in which Petitioner described his involvement with drug dealing. Counsel moved for these statements to be redacted, but the trial court determined that they were admissible, and they were shown to the jury.

At a charge conference, defense counsel objected to charging the jury on the depraved indifference murder count, stating that "whatever proof there is in this case, it all points in the direction of intentional and not depraved indifference." (Trial Transcript at 888.) Defense counsel also moved to dismiss, arguing that the charges were not supported by legally sufficient

evidence. The Court denied both applications and, after the defense rested, the jury was charged on both second degree murder charges (intentional and depraved indifference), as well as the lesser included charges of manslaughter in the first degree and manslaughter in the second degree. The jury convicted the Petitioner of depraved indifference murder, but acquitted him of intentional murder. On April 9, 2003, the trial court sentenced petitioner to a term of incarceration of twenty-one years to life.

Petitioner then appealed to the New York State Supreme Court, Appellate Division, Second Department, arguing that: (1) there was legally insufficient evidence of deprived indifference murder and the verdict was against the weight of evidence; and (2) he did not receive a fair trial due to the admission of portions of the videotaped statement which referred to his involvement in drug dealing activities. The Appellate Division rejected these arguments and affirmed the Petitioner's judgment of conviction on October 10, 2006. *People v. Campbell*, 33 A.D.3d 716 (2d Dept. 2006). The Appellate Division held that "a rational trier of fact could have reasonably found that the defendant acted not with intent to kill the victim, but rather with a recklessness evincing a depraved indifference to human life." *Id.* at 716. The Appellate Division noted that "there was no evidence of any dispute between the defendant and the decedent, that the defendant even knew the decedent, or was provoked before he shot and killed the decedent." 33 A.D.3d at 718.

The Court also held that the verdict "was not against the weight of the evidence" and that Petitioner's claim "that he was deprived of a fair trial because of the admission of a portion of his videotaped statement to the police in which he detailed his drug business, does not warrant reversal." *Id.* at 719. Petitioner moved for leave to appeal to the Court of Appeals, and the motion was denied on February 28, 2007. *People v. Campbell*, 8 N.Y.3d 879 (2008).

3

Petitioner subsequently filed a motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. That motion was denied, and on March 27, 2008, the Appellate Division denied his application for leave to appeal the decision. On December 26, 2007, Petitioner timely filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, he asserts the same claims he raised before the Appellate Division concerning the insufficiency of evidence regarding the depraved indifference murder conviction and the videotaped statements admitted at trial.

## DISCUSSION

### The Anti-Terrorism and Effective Death Penalty Act ("AEDPA")

Under AEDPA's deferential standard, a federal court may not grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Price v. Vincent*, 538 U.S. 634, 639-40 (2003). A federal habeas court may not issue a writ simply because it decides that the state court applied Supreme Court precedent incorrectly. *Price*, 538 U.S. at 641. Instead, as the Supreme Court has stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ [only] if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Henry v. Poole*, 409 F.3d 48, 67-68 (2d Cir. 2005); *Cotto v. Herbert*, 331 F.3d 217, 248 (2d Cir. 2003); *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001).

### There Was Legally Sufficient Evidence to Support Petitioner's Conviction for Depraved Indifference Murder

A petitioner raising an insufficiency claim bears a "very heavy burden." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (internal quotation marks omitted); *see also United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003). "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). However, "'[f]ederal courts are not forums in which to relitigate state trials.'" *Lonchar v. Thomas*, 517 U.S. 314, 340 (1996) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)). A habeas court is not permitted "to make its own subjective determination of guilt or innocence." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (internal quotation marks omitted). The operative inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

"When it considers the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999)). Under New York law, a person is guilty of depraved indifference murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in

5

conduct which creates a grave risk of death to another person, and thereby causes the death of another person." New York Penal Law § 125.25(2). Although there have been no changes in the statutory language, the New York law on depraved indifference murder has "changed markedly" during the past decade. *Rivera v. Cuomo*, No. 05-CV-1699, 2009 WL 4929264, at *17 (E.D.N.Y. Dec. 21, 2009); *see also Rustici v. Philips*, 497 F. Supp. 2d 452 (E.D.N.Y. 2007).

In 2001, under *People v. Register*, 60 N.Y.2d 270 (1983), the prosecution was "required to prove that defendant (1) recklessly engaged in conduct (2) which created a grave risk of death to another person (3) thereby causing the death of another person (4) under circumstances evincing a depraved indifference to human life." *Policano v. Herbert*, 7 N.Y.3d 588, 602 (2006). Recklessness was the *mens rea* for the offense and "'under circumstances evincing a depraved indifference to human life' defined the factual setting, viewed objectively, in which the risk-creating conduct occurred." *Id.* Thus, under the *Register* framework, depraved indifference murder was viewed as "resembl[ing] manslaughter in the second degree" because the two crimes shared the *mens rea* of recklessness. *Register*, 60 N.Y.2d at 276. The key difference that distinguished manslaughter in the second degree from second degree murder was the existence of "'circumstances evincing a depraved indifference to human life.'" *Id.* (quoting New York Penal Law § 125.25(2)).

Under *Register* and its progeny, "New York trial courts routinely charged the jury on both intentional and depraved indifference murder in cases involving one-on-one shootings." *Rivera*, 2009 WL 4929264, at *17. The issue of a defendant's state of mind was considered "to be a classic matter for the jury." *Policano*, 7 N.Y.3d at 599. Accordingly, both depraved indifference murder and intentional murder counts "were submitted to the jury for it to sort out the defendant's state of mind unless there was absolutely no evidence whatsoever that the

defendant might have acted unintentionally." *Id.* at 600-01. The Court of Appeals has explained that, as the law existed, the same evidence could support a conviction for intentional or depraved indifference murder:

> That a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference. To the contrary . . . under the *Register* formulation the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent-for example, a point-blank shooting of the victim in the head-likewise demonstrated depraved indifference.

*Id.* at 601.

In 2002, the Court of Appeals decided a case that "epitomized [the Court of Appeals'] depraved indifference jurisprudence under the *Register* regime." *Id.* at 599. In *People v. Sanchez*, 98 N.Y.2d 373 (2002), the defendant shot a man in the chest from a distance of about twelve to eighteen inches. The jury acquitted the defendant of intentional murder and convicted him of depraved indifference murder. The defendant argued on appeal that the evidence was only compatible with an intentional murder theory and "that the record is devoid of evidence of 'circumstances evincing a depraved indifference to human life.'" *Id.* at 377 (quoting New York Penal Law § 125.25(2)).

Relying on *Register*, the Court of Appeals held that "a jury reasonably could have found that defendant's homicidal level of mental culpability was reckless rather than intentional." *Id.* at 378. The Court further determined that "defendant's shooting into the victim's torso at point-blank range presented such a transcendent risk of causing his death that it readily meets the level of manifested depravity needed to establish [depraved indifference] murder." *Id.*

Beginning in June 2003, the Court of Appeals issued a number of decisions that "pointed the law in a different direction." *People v. Feingold*, 7 N.Y.3d 288, 292 (2006) (citing *People v.*

*Hafeez*, 100 N.Y.2d 253 (2003); *People v. Gonzalez*, 1 N.Y.3d 464 (2004); *People v. Payne*, 3 N.Y.3d 266 (2004); *People v. Suarez*, 6 N.Y.3d 202 (2005)). The Court's decisions from June 2003 onward limited the scope of depraved indifference murder, and the Court's "interpretation of [the fourth element] gradually and perceptibly changed from an objectively determined degree-of-risk standard (the *Register* formulation) to a *mens rea*." *Policano v. Herbert*, 7 N.Y.3d 588, 602-03 (2006). In July 2006, *Register* was expressly overruled when the Court explicitly held that "depraved indifference to human life is a culpable mental state." *Feingold*, 7 N.Y.3d at 294.

The New York Court of Appeals has made clear that the post-*Sanchez* changes in the law do not apply retroactively. The Court explained that "nonretroactivity pose[d] no danger of a miscarriage of justice" and noted that "retroactive application would potentially flood the criminal justice system with CPL 440.10 motions to vacate convictions of culpable intentional murderers who were properly charged and convicted of depraved indifference murder under the law as it existed at the time of their convictions." *Policano*, 7 N.Y.3d at 604. Given that the changes in the law are not retroactive, in certain cases, "the date used to determine which version of New York law to apply may be determinative." *Rivera v. Cuomo*, No. 05-CV-1699, 2009 WL 4929264, at *21 (E.D.N.Y. Dec. 21, 2009).

In this case, Petitioner was convicted on April 9, 2003, before the law began to change in June 2003 with the Court of Appeals' decision in *People v. Hafeez*, 100 N.Y.2d 253 (2003). The Petitioner's conviction did not become final until 2007, after *Feingold* was decided. However, the outcome would be the same in this case regardless of whether pre-*Hafeez* or post-*Feingold* law is applicable. Under either version of New York law, the evidence was sufficient to support a conviction for depraved indifference murder.

After a careful examination of the record, the Court concludes that, viewing the evidence in the light most favorable to the prosecution, a rational juror could have found that the prosecution proved the elements of depraved indifference murder beyond a reasonable doubt. Petitioner's case is a "classic example" of cases which properly fall within the scope of the depraved indifference murder statute. *Ayala v. Conway*, No. 03 CV 3424, 2008 WL 2169537, at *5 n.3 (E.D.N.Y. May 22, 2008) (petitioner fired in the direction of a group of men fleeing from him after he pulled out a gun in front of an apartment complex).

Under the *Register* framework, there was clearly sufficient evidence to support a conviction for depraved indifference murder. The facts of this case are similar to the facts presented in *People v. Fenner*, 61 N.Y.2d 971 (1984). In that case, the defendant shot at a group of people "running toward the door of [a] poolroom in an effort to get away from defendant." *Id.* at 973. The Court of Appeals held that the facts of the case, "though not as egregious . . . as those involved in [*Register*], were sufficient to present a question for the jury concerning whether defendant evinced 'a depraved indifference to human life.'" *Id.* (quoting New York Penal Law § 125.25(2)). In the case at bar, there was sufficient evidence for the jury to conclude that the Petitioner acted with the requisite *mens rea* and that the case involved "circumstances evincing a depraved indifference to human life." New York Penal Law § 125.25(2).

Even applying New York law after the post-*Sanchez* line of cases, the same result is warranted. This case does not involve a one-on-one shooting at close range where there was "a manifest intent to kill" the victim. *People v. Payne*, 3 N.Y.3d 266 (2004). None of the post-*Sanchez* cases that restricted the scope of depraved indifference murder are factually analogous to the case before the Court. *See Archer v. Fischer*, No. 05CV4990, 2009 WL 1011591, at *14 (E.D.N.Y. Apr. 13, 2009). In fact, in *Payne*, the Court of Appeals specifically cited *Fenner* as an

example of cases in which depraved indifference murder was applicable. 3 N.Y.3d at 271. As stated above, Petitioner fired multiple shots in the direction of the men as they were fleeing in the courtyard, and there was no evidence of any prior dispute between the Petitioner and the victim. Viewing the evidence in the light most favorable to the prosecution, a rational juror could have found the elements of depraved indifference murder satisfied beyond a reasonable doubt under New York law as it exists after *Feingold.*

The evidence was legally sufficient to support the conviction. As the Appellate Division correctly held, "this case fits into the narrow category of cases where depraved indifference murder properly applies." *People v. Campbell*, 33 A.D.3d 716, 719 (2d Dept. 2006) (citing *People v. Feingold*, 7 N.Y.3d 288 (2006). Accordingly, Petitioner's insufficiency claim must be denied. Petitioner's weight of the evidence claim is also without merit. Such claims are "not cognizable on habeas review." *Flores v. Ercole*, No. 06-CV-6751, 2010 WL 1329036, at *8 (E.D.N.Y. 2010); *see also Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 2006); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001).

### Petitioner's Statements Regarding Uncharged Drug Dealing Activity Did Not Deprive Him of a Fair Trial

Petitioner claims that the admission of his videotaped statements regarding uncharged drug dealing activity deprived him of a fair trial. It is well settled that habeas relief should only be granted based on an evidentiary ruling when the ruling "deprived [the petitioner] of a *fundamentally fair* trial." *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (emphasis in original) (internal quotation marks omitted). Indeed, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983). The principal question is "whether the erroneously admitted evidence, viewed objectively in light of the entire record

10

before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985). "This constitutes a heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation." *Thomas v. State of New York*, No. 08 Civ. 4389, 2009 WL 763460, at *1 (E.D.N.Y. Mar. 23, 2009) (internal quotation marks omitted); *see also Rosario v. Ercole,* 582 F. Supp. 2d 541, 558 (S.D.N.Y. 2008) (holding that "evidentiary rulings, even erroneous ones, rarely rise to the level of a constitutional violation.")

In the present case, even assuming that the trial court erroneously admitted the videotaped statements under state law, Petitioner's claim fails. In light of the overwhelming evidence of Petitioner's guilt, the admission of the statements did not deprive Petitioner of a fundamentally fair trial. *See Tingling v. Donelli*, No. 07 Civ. 1833, 2008 WL 4724567, at *2 (S.D.N.Y. Oct. 24, 2008); *Escalona v. Sears*, No. CV-06-6769, 2008 WL 4534007, at *12 (E.D.N.Y. Oct. 8, 2008). Accordingly, Petitioner is not entitled to habeas relief based on his challenge to the trial court's evidentiary ruling regarding the videotaped statements.

## CONCLUSION

Accordingly, the instant petition for a writ of habeas corpus is **DENIED**. A certificate of appealability shall not be issued because Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The court certifies that any appeal would not be taken in good faith and therefore in forma pauperis status is **DENIED** for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated: August 30, 2010
Brooklyn, New York

/ **SANDRA L. TOWNES, U.S.D.J.**

11